IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–00275–CMA–KMT

JOHN NASIOUS,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER - Denver Sheriffs [sic] Department,
SHERIFF STRONG, Denver Sheriffs [sic] Department, in his official and individual capacity,
NURSE ROSIE PAGLIANO - Denver Sheriffs [sic] Department, in her official and individual capacity,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on the "City and County of Denver's Combined Summary Judgment Motion and Brief" (Doc. No. 181 [City's Mot.], filed January 17, 2012), "Defendant Sheriff Strong's Motion for Summary Judgment and Memorandum Brief" (Doc. No. 182 [Strong's Mot.], filed January 17, 2012), and the "Motion for Summary Judgment by Defendant Nurse Rosie Pagliano" (Doc. No. 187 [Pagliano's Mot.], filed January 27, 2012). Plaintiff filed a combined response on April 24, 2012. (Doc. No. 203 [Resp.].) Defendant City and County of Denver filed its reply on May 10, 2012 (Doc. No. 207 [City's Reply]), Defendant Strong filed his reply on May 10, 2012 (Doc. No. 205 [Strong's Reply]), and Defendant Pagliano filed *her* reply on May 11, 2012 (Doc. No. 208 [Pagliano's Reply]). These motions are ripe for recommendation and ruling.

# I.  PROCEDURAL BACKGROUND

This case has a long and complicated history.  Plaintiff filed a first lawsuit on October 10, 2006, naming at least twenty defendants and asserting several claims concerning his incarceration in the Denver County Jail and the Arapahoe County Detention Facility.  Magistrate Judge Boyd N. Boland directed Plaintiff to file an amended complaint that conformed to the pleading requirements of Fed. R. Civ. P. 8.  On November 9, 2006, Plaintiff filed an amended complaint, alleging a multitude of claims against more than forty defendants.  The district court dismissed the lawsuit with prejudice because the amended complaint failed to comply with Rule 8.  On appeal, the Tenth Circuit Court of Appeals reversed and remanded for further proceedings, because the district court's dismissal with prejudice did not consider any of the factors for dismissing with prejudice set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).  *Nasious v. Two Unknown BICE Agents*, 492 F.3d 1158, 1162–64 (10th Cir. 2007).

Following remand, and upon direction of the Magistrate Judge Boland, Plaintiff filed, on December 3, 2007, a second amended complaint, this time asserting three unrelated sets of claims against three unrelated groups of defendants.  In his complaint, he alleged (1) civil rights violations relating to a sexual assault at the Denver County Jail and medical malfeasance; (2) an illegal immigration detainer; and (3) the denial of the exercise of his religion due to the denial of a kosher diet at the Arapahoe County Detention Facility.  With respect to these three sets of claims, he named three separate sets of defendants: (1) Nurse Rosie Pagliano, Sheriff Strong, and another person affiliated with the Denver County Jail; (2) two Bureau of Immigration and Customs Enforcement agents and another person employed with the Department of Homeland

2

Security; and (3) two employees of the Aramark Corporation, which provided meals at the Arapahoe County Detention Facility, and the sheriff responsible for the operation of the Arapahoe County Detention Facility.

Magistrate Judge Boland concluded that these separate and unrelated claims against three separate groups of defendants were improper because Plaintiff had combined what should be three lawsuits into one pleading. Magistrate Judge Boland found that the second amended complaint violated Fed. R. Civ. P. 20(a)(2). Magistrate Judge Boland noted that misjoinder of parties is not a ground for dismissing an action, but that, instead, the court may dismiss improper parties. Thus, Magistrate Judge Boland required Plaintiff to file a third amended pleading that complied with the joinder requirements of Rule 20(a)(2). Plaintiff then filed his third amended complaint on January 14, 2008, asserting immigration-detainer claims against immigration officials only.

Less than a month later, on February 8, 2008, Plaintiff filed this, his second, lawsuit in which he sued, *inter alia*, the City and County of Denver, Sheriff Strong, Nurse Rosie Pagliano, and Denver Health Medical Center for civil rights violations and for medical negligence. (Doc. No. 2.) On February 28, 2008, Magistrate Judge Boland issued an Order directing the Plaintiff to file an amended complaint. (*See* Doc. No. 7.) In his Order, Magistrate Judge Boland found Plaintiff's complaint to be deficient because "it is not clear who Mr. Nasious intends to sue in this action. Mr. Nasious lists what appear to be seven Defendants in the caption of the complaint . . . [yet] lists only five Defendants in . . . the section that describes the parties to the action." (*Id.* at 1–2.) On March 25, 2008, Plaintiff filed his Amended Prisoner Complaint, in which he

3

omitted Denver Health Medical Center as a defendant in both the caption and in the section of the complaint that describes the parties. (*See* Doc. No. 9 at 1–2.)

Nearly eleven months later, on February 18, 2009, Plaintiff filed a second amended complaint, in which he again named Denver Health Medical Center as a defendant. (Doc. No. 48.) This court granted Defendant Pagliano's motion to strike the second amended complaint for Plaintiff's failure to comply with Fed. R. Civ. P. 15(a)(2) and for failure to file a motion to amend his complaint by the deadline set by this court for amending pleadings. (*See* Doc. No. 56 at 2.)

Defendant Pagliano moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing the claims against her were time-barred by Colorado's two-year statute of limitations. *See* Colo. Rev. Stat. §§ 13-80-102(1)(g); 13-80-102.5; 13-80-108(1). (Doc. No. 42.) Plaintiff countered that his claims were timely because the statute of limitations began to run on July 3, 2007, the date the Tenth Circuit reversed and remanded his first lawsuit. (Doc. No. 54.) This court recommended that Defendant Pagliano's motion to dismiss be granted because Plaintiff's claims were time-barred under the applicable Colorado two-year statute of limitations and his first lawsuit did not toll the statute of limitations with respect to his second lawsuit. (Doc. No. 69.) This court also found that the doctrine of equitable tolling would not save Plaintiff's claims because there were neither extraordinary circumstances present nor wrongful acts by Defendant Pagliano impeding him from timely asserting his claims. (*Id.*) Former Senior Judge Weinshienk adopted this court's recommendation, decided the claims against Defendant Pagliano were time-barred, and dismissed them. (Doc. No. 117.)

Defendants the City and County of Denver, Sheriff's Department and Sheriff Strong also filed a Rule 12(b)(6) motion to dismiss Plaintiff's claims against them as time-barred under Colo. Rev. Stat. § 13-80-102(1)(g). (Doc. No. 85.) This court recommended that the motion be granted. (Doc. No. 90.) Plaintiff, in his objection, argued that the statute of limitations was tolled while he exhausted his administrative remedies and his untimely lawsuit should be excused because Magistrate Judge Boland, in the initial suit, did not adequately advise him how to proceed. (Doc. No. 100.) Former Senior Judge Weinshienk adopted this court's recommendation, finding that even if Plaintiff's claims had been tolled while he exhausted his administrative remedies, they were still time-barred. (Doc. No. 121.)

Plaintiff filed an appeal with the Tenth Circuit Court of Appeals, which agreed with Magistrate Judge Boland's determinations that Plaintiff improperly and contrary to Rule 20(a)(2) joined three separate and unrelated sets of claims against three separate and unrelated defendant groups and that misjoinder under Rule 21 was not grounds for dismissal of the lawsuit. However, the Tenth Circuit found that Magistrate Judge Boland, by directing Plaintiff to choose which one of the three sets of defendants and claims he wished to pursue in his first lawsuit, effectively dropped all of the other defendants and claims for misjoinder, without analyzing the consequences on the record and without considering whether it would have been appropriate to sever the three sets of claims to allow them to proceed separately. The Tenth Circuit determined it was improper for the district court to effectively dismiss claims and drop parties without analyzing on the record whether dismissal affected Plaintiff's ability to meet the statute of limitations. Finally, the Tenth Circuit found that Colorado's doctrine of equitable tolling

5

applied, requiring Plaintiff's original filing date for the claims in this case be honored and that

this suit be deemed timely.  The Tenth Circuit then remanded this case for further proceedings.

*See Nasious v. City and County of Denver-Denver Sheriff's Dep't*, 415 F. App'x. 877, 882 (10th

Cir. 2011).  The Tenth Circuit described Plaintiff's remaining claims as follows:

> (1) after Nurse Pagliano evaluated him for a seizure on June 18, 2005, she placed
> him in a jail observation cell with an "at risk" inmate, who sexually assaulted him
> and caused him to suffer personal injuries during the assault; (2) after he reported
> the crime and injuries on June 19, Sheriff Strong and others ignored his pleas for
> medical treatment, refused to move him to another cell, failed to secure the crime
> scene, and threw away his "kite"; (3) the City and County of Denver, Sheriff's
> Department failed to fully investigate the assault and instead covered it up; and
> (4) the City and County of Denver, Sheriff's Department retaliated against him for
> filing a lawsuit.

415 F. App'x at 879.  Plaintiff's claim brought under the Prisoner Rape Elimination Act of 2003

("PREA") previously was dismissed by former Senior Judge Weinshienk.  (*See* Doc. No. 121 at

4.)  The Tenth Circuit noted that Plaintiff did not continue to assert this claim on appeal.  415 F.

App'x at 879, n.2.

## II.  STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Amended Prisoner Complaint.  In Claim

One, Plaintiff asserts that Defendants violated his Eighth Amendment rights.  Plaintiff alleges

that on June 19, 2005, Defendant Pagliano evaluated and treated Plaintiff for a seizure at the

Denver County Jail infirmary.  (Compl. [Doc. No. 9.] at 8, ¶ 14.)  He states Defendant Pagliano

placed him in a cell for observation of a seizure disorder.  (*Id.*, ¶ 15.)  Plaintiff alleges he was

placed in the same cell as an "at risk inmate" and that his life was placed "in harms [sic] way."

(*Id.*)  Plaintiff asserts that Defendant Pagliano had prior knowledge that his cellmate was

mentally ill and was refusing to take his psychiatric medications.  (*Id.*, ¶ 16.)  Plaintiff states he was "awakened abruptly with a wet tongue in his ear and a hand grabbing his penis."  (*Id.*, ¶ 18.)  Plaintiff alleges during the struggle of the attack, he injured his arm, neck, and shoulder and still suffers as a result of his injuries.  (*Id.* at 8–9, ¶¶ 19–20.)  Plaintiff states that Defendant Strong was the officer on duty the morning of this incident.  (*Id.*, ¶ 22.)

In Claim Two, Plaintiff alleges that Defendants violated the PREA.  Plaintiff contends that he reported the alleged attack to Defendant Strong, who "refused to prevent and protect [Plaintiff] from further harm and left him in great pain and suffering and discomfort, terrified with his attacker for 8 hrs."  (*Id.*, ¶ 25.)  Plaintiff also alleges that Defendant Strong failed to secure the crime scene and threw away kites completed by Plaintiff regarding the incident.  (*Id.*, ¶ 26.)  Plaintiff states that Defendant City and County of Denver ("the City") failed to enforce a zero-tolerance policy relating to the incident, failed to fully investigate the incident, and failed to prosecute his attacker.  (*Id.*, ¶¶ 30–31.)  Plaintiff alleges he has not been provided adequate follow-up medical care and mental health counseling.  (*Id.*, ¶ 39.)  Plaintiff states he "has been retaliated against for filing this case in the past, subjecting him to intentional infliction of mental distress, mental pain and anguish."  (*Id.*, ¶ 55.)

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.* at 26.)

## III.  UNDISPUTED MATERIAL FACTS[1]

*A.*     *Pre-Alleged Sexual Assault Incident*

1.      On the evening of June 18, 2005, Plaintiff Nasious experienced a seizure and was brought to the Denver County Jail Infirmary (Medical Building).  (Doc. No 9 at 7, ¶¶ 14, 15; Pagliano's Mot., Ex. B[2].)

2.      The Denver Sheriff's Department had an inmate classification system in place in June 2005 to determine housing in the jail for each inmate.  (City's Mot., Ex. BB, ¶ 2; Ex. BB-5, Department Order 4410.1H.)

3.      To determine a proper classification of inmates requires a study of the specific facts concerning the inmate.  (*Id.*, Ex. AA, 40:3–7.)

4.      During June of 2005, the actual placement of inmates in certain cells in the medical unit was handled by Sheriff's Department personnel.  (Pagliano's Mot., Ex. C [Aff. of Sergeant Joseph E. Garcia], ¶¶ 6, 7; Exhibit A [Aff. of Nurse Rosie Pagliano], ¶ 6.)

---

[1]Defendant Strong states that discovery requests were placed in the mail to Plaintiff on November 10, 2011, and that as of the date of the filing of his Motion for Summary Judgment, no responses had been received and the discovery deadline had passed.  (Strong's Mot. at 2.)  As Defendant Strong included requests for admissions within the discovery requests and more than thirty days passed without written answers or objections, the requests for admissions are deemed admitted pursuant to Fed. R. Civ. P. 36.  The admissions serve as the basis for some of the Undisputed Material Facts.  (Strong's Mot. at 3.)

[2]Exhibit B, the Problem Oriented Record dated June 18, 2005, identifies the patient as "Paul Brooks," which is a false identity that was used by Plaintiff John Nasious when he was arrested.  Plaintiff confirmed at his deposition that he was the patient referred to as "Paul Brooks."  (*See* Strong's Mot., Ex. A at 80-81.)

5.      After the alleged incident, Plaintiff was seen by both medical and psychological/psychiatric personnel at the Denver County Jail and received treatment by the same.  (Strong's Mot., Ex. A, 52:17–53:2; 79:9–80:3; 110:15–112:5; 114:4–114:21; 117:24–118:14.)

6.      Around 2200 on June 18, 2005, Defendant Nurse Pagliano provided care and treatment to Plaintiff in the medical unit, which included a review of Plaintiff's medications. (Pagliano's Mot., Ex. B.)

7.      As part of her care and treatment, Defendant Nurse Pagliano called the doctor to determine how Plaintiff's medications should be administered during his stay in the medical unit. (*See id.*, Ex. A, ¶ 5.)

8.      Nurses employed by Denver Health and Hospital Authority were not responsible for placing inmates in particular cells in the medical unit.  (*Id.*, Ex. C, ¶ 7; Ex. A, ¶ 6.)

9.      As a nurse working in the medical unit, Defendant Nurse Pagliano would not have decided or directed which observation cell Plaintiff was to occupy.  (*Id.*, Ex. A, ¶ 6; Ex. C, ¶¶ 7, 8.)

10.      On June 18, 2005, Defendant Nurse Pagliano had no personal knowledge regarding the criminal propensities of any inmate with whom Plaintiff may have shared a cell. (*Id.*, Ex. A, ¶ 7.)

11.      After Defendant Nurse Pagliano provided care and treatment to Plaintiff, the Sheriff's Department personnel placed him in cell # 5 for observation of any further seizure activity.  (*Id.*, Ex. A, ¶ 6; Ex. B; Ex. C, ¶ 8.)

12.     Plaintiff was placed in a cell with inmate Neil Huebler.  (Doc. No. 9 at 7, ¶¶ 15, 16.)

13.     In the Sheriff's Department's classification records regarding Plaintiff's cellmate, who was accused by Plaintiff of sexual assault, there is no history of, or indication of, sexual assaults.  (City's Mot., Exh. BB, ¶ 3.)

**B.      *Day of and Day After Alleged Sexual Assault Incident***

14      Plaintiff alleges he was attacked at approximately 3:00 a.m. on June 19, 2005. (Strong's Mot., Ex. A, 41:1–41:5.)

15.     At no time after the alleged 3:00 a.m. attack was Plaintiff ever attacked again in the Denver County Jail, nor did Neil Huebler ever say anything to or touch Plaintiff.  (*Id.*, 51:24–52:10; 54:14–54:16; 78:6–78:12.)

16.     Deputies make rounds approximately every thirty minutes in the medical building area where Plaintiff was housed.  (Mot., Ex. B [Def. Strong's First Set of Discovery Requests to Plaintiff] at 5, ¶ 1.]

17.     Plaintiff did not make any report of the alleged assault to any deputy during these rounds.  (*Id.* at 5, ¶ 2.)

18.     Nurses make medication rounds with deputies during the day in the Medical Building.  (*Id.* at 5, ¶ 3.)

19.     A medication round was conducted at approximately 5:30 a.m. in the Medical Building on the morning of the alleged incident.  (*Id.* at 5, ¶ 4.)

20.     Plaintiff did not make any reports to the nursing staff or deputies when the 5:30 a.m. medication round was conducted.  (*Id.* at 5, ¶ 5.)

21.     Sergeant Gutierrez was present in the Medical Building at approximately 5:19 a.m. on the morning of the alleged incident.  (*Id.* at 5, ¶ 6.)

22.     Plaintiff did not make a report to Sergeant Gutierrez on the morning of the alleged incident.  (*Id.* at 5, ¶ 7.)

23.     Deputies are present when breakfast is provided to inmates in the Medical Building.  (*Id.* at 5, ¶ 8.)

24.     Plaintiff did not make a report to any individual during the breakfast rounds on the morning of the alleged incident.  (*Id.* at 6, ¶ 9.)

25.     Plaintiff does not recall what time Deputy Strong started his shift on the morning of June 19, 2005.  (Strong's Mot., Ex. A, 42:3–42:5.)

26.     Deputy Strong was not present during the alleged assault on the Plaintiff. (*Id.*, 46:13–46:15.)

27.     Deputy Strong did not arrive at his post until 5:50 a.m. and did not start his shift until 6:00 a.m. on June 19, 2005.  (Strong's Mot., Ex. C [Aff. of Terry Strong], ¶ 4; Ex. E [Denver Sheriff Department Log Sheets June 19, 2005].)

28.     Plaintiff did not attempt to report the incident for approximately three hours after it occurred.  (Strong's Mot., Ex. B, at 5, ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9; Ex. D [Supplementary Report, Ex. 12 to Pl.'s Dep.].)

11

29.     Plaintiff did not make a report to any individual, other than his alleged reports to Deputy Sheriff Strong, during the entirety of Deputy Strong's shift on the date of the alleged incident.  (Strong's Mot., Ex. B at 6, ¶ 10.)

30.     Deputy Strong did not conduct rounds on the morning of June 19, 2005. (Ex. C, ¶ 10; Ex. E.)

31.     After Defendant Strong's shift ended, Plaintiff spoke to a sergeant at the jail about the alleged assault.  (Strong's Mot., Ex. A, 45:9–10.)

32.     The Denver Sheriff's Department contacted the Denver Police Department about the alleged assault.  (*Id.*, 45:10–12.)

33.     Plaintiff talked with a Denver police officer about the alleged assault and completed a written statement.  (*Id.*, 78:13-21; City's Mot., Ex. CC-1.)

34.     Plaintiff submitted a grievance concerning the alleged assault.  (City's Mot., Ex. BB-2.)

35.     On June 20, 2005, Plaintiff was moved to a different cell in the Medical Building.  (*Id.*, 154:25-156:9; City's Mot., Ex. BB-1 [Aff. of Sergeant Sonya Gillespie] at 3.)

36     Plaintiff is not sure how long it was before he was moved to a different cell.  (*Id.*, 156:10-158:4.)

## C.     *Release from Denver County Jail and Thereafter*

37.     Plaintiff was released from the custody of the Denver County Jail on June 25, 2005.  (*Id.*, 57:17–58:25; 86:3–86:20; 108:5–108:11; 118:15–118:18; 125:10–125:15; Ex. F

[Denver Sheriff Department County Jail Inmate Release Authorization and Audit, dated June 25, 2005].)

38.     Plaintiff was using drugs and alcohol after his release from jail on June 25, 2005. (Strong's Mot., Ex. A, 83:2–10.)  Drugs used included powder cocaine and meth.  (*Id.*, 97:24-98:9.)

39.     Plaintiff gave an address to the jail which did not exist.  (City's Mot., Ex. CC-2 at 1; Ex. CC; Strong's Mot., Ex. A, 84:1-7.)  Plaintiff was staying at another address he did not give to anyone.  (Strong's Mot., Ex. A, 85:4-22.)

40.     Both the Sheriff and Police Department tried to contact Plaintiff after his release from jail on June 25, 2005, to further investigate the alleged assault, but their efforts failed because Plaintiff did not provide accurate contact information.  (Ex. CC-2; Exh. BB-4.)

41.     Plaintiff physically left the building in question, however never completed a community corrections program because Plaintiff ran away.  (Strong's Mot., Ex. A, 74:8-9, 75:10-23.)  Plaintiff is presently in a community corrections facility.  (*Id.*, 8:25-9:4.)

42.     Plaintiff does not have knowledge of classification training of Sheriff's Department personnel.  (Strong's Mot., Ex. A, 40:3-25.)

43.     Plaintiff has not reviewed the history, background or propensity towards violence of inmates that went through classification intake at the Denver County Jail in June 2005. (Strong's Mot., Ex. A, 38:17–21.)

44.     Plaintiff does not complain about any Sheriff's Department policy that existed in June 2005.  (*Id.*, Ex. A, 90:16–19.)

45.     The Denver County Jail Inmate Handbook advised inmates of both the Classification and Grievance Process.  (City's Mot., Ex. BB-6 at 22–23.)

## III.  LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## IV. ANALYSIS

### A.    *Preliminary Matters*

#### 1.    *Form of Response*

In response to Defendants' motions, Plaintiff has submitted 178 pages of handwritten arguments and documents, medical records, reports by various agencies, and other miscellaneous evidence. (*See* Resp.) District Judge Christine M. Arguello's practice standards provide that, "General references to cases, pleadings, depositions, or documents are insufficient if the document is more than one page in length. Whenever possible, specific references in the form of pinpoint citations shall be used to identify relevant excerpts from a document." (CMA Civ. Practice Standards III.A.3.) Judge Arguello's practice standards also provide that

5.      Any party opposing the motion for summary judgment shall provide a "Response to Undisputed Material Facts" in its brief, admitting or denying the asserted material facts set forth by the movant.  The admission or denial shall be made in paragraphs numbered to correspond to movant's paragraph numbering. Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial.

6.      If the party opposing the motion believes that there are additional disputed facts which have not been adequately addressed in the submissions made pursuant to this Section (for example, disputed facts concerning an affirmative defense), the party shall, in a separate section of the party's brief styled "Statement of Additional Disputed Facts," set forth in simple declarative sentences, separately numbered and paragraphed, each additional material disputed fact which undercuts movan''s claim that movant is entitled to judgment as a matter of law. Each separately numbered and paragraphed fact shall be accompanied by specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed.

(CMA Civ. Practice Standards III.G.5–6.)  Plaintiff's response does not purport to identify specific documents by page or exhibit number.  Plaintiff's response also fails to provide a response to the undisputed material facts or a statement of additional disputed facts.  Thus, Plaintiff has failed to comply with Judge Arguello's practice standards.

The court has no obligation to sift through Plaintiff's evidence to determine if there is a trial-worthy issue.  *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) (holding that the Court is "not obligated to comb the record in order to make [Plaintiff's] arguments for him.").  "[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).  Plaintiff's response to the motions for summary judgment has entirely failed to meet this burden, and this failure, in and of itself, is sufficient reason to grant summary

judgment in favor of Defendants.  *See Mitchell*, 218 F.3d at 1199 (holding summary judgment is appropriate when an opposition is "limited to conclusory statements and . . . void of cites to the specific portions" of the record containing relevant evidence).

The court declines to page through hundreds of documents in search of evidence that would support Plaintiff's claims.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these materials, but is not required to do so").  Rather, it is Plaintiff's obligation as a litigant to cull the evidence and identify, with particularity and by page, that which is probative of a particular factual assertion.  As the Tenth Circuit in *Adler* observes, the courts play a neutral role in the litigation process, and should be "wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."  *Id.*  Here, upon a careful review of Plaintiff's response, the court has been unable to find any reference to any disputed facts.

### 2. *Plaintiff's Request to Strike Exhibits*

In his response, Plaintiff argues that because he did not sign his deposition, it cannot be used against him, and that it must be stricken.  However, this court previously denied a motion by Plaintiff to strike his deposition on the same basis.  (*See* Doc. No. 179.)  Thus, the court declines to entertain Plaintiff's request in this regard.

Plaintiff also argues that all exhibits provided by Defendants must be signed and that they must be stricken because they are not signed.  It appears Plaintiff is attempting to argue that if an exhibit is not signed, it is inadmissible.  However, there is no rule in the Federal Rules of Civil Procedure that requires the signing of an exhibit.  Indeed, the rule to which the Plaintiff appears

to be basing his argument, Fed. R. Civ. P. 11, requires only that pleadings, motions and other papers be signed.  Based on the plain language of Rule 11 and the plain language of Rule 7, to which Rule 11 cites, this requirement is only for pleadings and motions or other papers drafted by an attorney of record and filed with the Court.  There is nothing in the rules or the comments to suggest that exhibits are included in this requirement, and indeed Plaintiff cites to no law to suggest the same.  Plaintiff's request in this regard is denied.

**B.**     ***Defendant City and County of Denver's Motion for Summary Judgment***

There are two claims in the Tenth Circuit's description of claims that were made directly against the City and the Sheriff's Department: (1) that the City and County of Denver, Sheriff's Department failed to fully investigate the assault and instead covered it up; and (2) that the City and County of Denver, Sheriff's Department retaliated against Plaintiff for filing a lawsuit.

**1.**     ***Denver Sheriff's Department Is Not a Proper Party***

Defendant City and County of Denver (hereinafter "City") argues that Plaintiff may not sue the Defendant Sheriff's Department.  Indeed, the Denver Sheriff's Department is not a separate entity from the City and County of Denver and, thus, is not a person under 42 U.S.C. § 1983.  *See Stump v. Gates*, 777 F. Supp. 808, 814–16 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993). Thus, the claims asserted against the Denver Sheriff's Department must be considered as asserted against the City and County of Denver, and the claims against the Denver Sheriff's Department must be dismissed.

### 2.      *Municipal Liability*

A plaintiff suing a municipality under § 1983 for the actions of one of its officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.  *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).  A municipality or other local government unit is liable for constitutional torts only if the alleged unconstitutional acts implement a policy, ordinance or custom of the local government.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 694 (1978); *Garcia v. Salt Lake County*, 768 F.2d 303, 308 & n.4 (10th Cir. 1985).  A municipality is responsible under § 1983 only when the execution of a government policy or custom actually causes an injury of constitutional dimensions.  *Monell*, 436 U.S. at 694; *see also D.T. v. Indep. Sch. Dist.*, 894 F.2d 1176, 1187 (10th Cir. 1990) (plaintiff must prove direct nexus between constitutional tort and municipality's authorization or approval thereof, either expressly or otherwise, by the adoption of any plan or policy).  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

The City argues that the plaintiff has not pointed to any City policy or custom adopted or maintained with objective deliberate indifference to constitutional rights that resulted in harm to Plaintiff's rights.  In his response to the motion for summary judgment, Plaintiff does not cite to any evidence that the alleged unconstitutional acts were a result of a custom and policy of the

City of Denver.  Thus Plaintiff has not cited any evidence that demonstrates the existence of a genuine issue of material fact concerning his claim for failure to investigate against the City. Even viewing the evidence in the record in the light most favorable to Plaintiff, no reasonable fact finder could find in favor of Plaintiff on this claim, and the City is entitled to summary judgment on this claim.

**C.    *Defendant Strong's Motion for Summary Judgment***

**1.    *Eighth Amendment Deliberate Indifference Claim***

As a pretrial detainee in state custody, Plaintiff's protection from unconstitutional conditions of confinement comes from the Fourteenth Amendment.  The distinction effectively is immaterial, though, because "[u]nder the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection . . . which applies to convicted inmates under the Eighth Amendment."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (alteration and quotation omitted).

**a.    *Medical Needs***

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  "Deliberate indifference" involves both an objective and a subjective component.  The objective component is met if the deprivation is "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)

20

(quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)).  The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.

Defendant Strong argues that Plaintiff's Eighth Amendment claim against him fails.  First, Defendant Strong argues that there is no evidence of a "serious medical need."  (Mot. at 10.)  Plaintiff submitted a portion of his medical records with his Complaint.  (Doc. No. 9 at 16–22.)  Those records demonstrate that just after the alleged incident was reported, medical personnel initially felt that the only necessary treatment for the Plaintiff's claimed injuries was over-the-counter pain medication and a referral to a psychiatric provider at the Plaintiff's request.  (*Id.)* Specifically, the only treatment provided to Plaintiff by the medical professionals who were treating his alleged injuries was to initially prescribe Motrin and then prescribe an increase in the other pain medication the Plaintiff had previously been taking for his back problems.  (Strong's Mot., Ex. A, 32:11–32:18; 90:22–91:4; 117:6–117:17.)  Additionally, Plaintiff's own testimony establishes that the only physical injuries he alleged were aggravation of his existing back, neck and shoulder issues and an injury to his knee.  (*Id.*, 53:3–53:8; 59:1–59:5; 61:3–61:4.)  Based on the undisputed evidence, there is no factual basis to suggest that the Plaintiff had a "serious" medical need of which Sheriff Strong, who is not a medical professional, should have been aware.  Therefore, the Plaintiff cannot establish even the first prong of the analysis under the *Estelle* case.

Defendant Strong argues that, even if the Plaintiff were able to establish that Defendant Strong should have been aware of any alleged injury to the Plaintiff, it cannot be established that

Defendant Strong was deliberately indifferent to the Plaintiff's medical needs. "To prevail on the subjective component, the prisoner must show that the defendant[] knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted). A prisoner may establish that a defendant knew of the substantial risk of harm faced by the prisoner by showing that the defendant's delay in providing medical treatment caused either unnecessary pain or a worsening of his condition. *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005). Furthermore, the prisoner may establish substantial harm by evidence of a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

As the Plaintiff was housed in the Medical Building on the date of the alleged incident, he had access to medical personnel at a minimum each time their rounds were conducted and as demonstrated in the Undisputed Material Facts. (*See* Strong's Mot., Exs. B & E.) Defendant Strong was aware that the Plaintiff was housed in the Medical Building and that the nurses and other deputies conducted rounds on a regular basis. (*Id.*, Ex. C.) Additionally, Plaintiff had access to numerous Sheriff's Department employees to whom he could have made requests if he felt that Defendant Strong was not responding to him. (*Id.*, Exs. B & E.) Plaintiff has not provided any evidence to suggest that any delay that may have occurred as a result of Defendant Strong's alleged actions caused him "substantial harm." Therefore, there is no constitutional violation even if there was a delay in treatment.

Furthermore, the undisputed evidence shows that Plaintiff both saw and received treatment from various medical and mental health personnel on almost a daily basis from the time of the alleged assault on the Plaintiff on June 19, 2005, to the time the Plaintiff was released from the custody of the Denver County Jail on June 25, 2005.  (*Id.*, Ex. A, 52:17–53:2; 79:9–80:3; 110:15–112:5; 114:4–114:21; 117:24–118:14.)  Additionally, it is undisputed that the only treatment prescribed for Plaintiff was an increase in medication to alleviate his alleged pain. (Doc. No. 9 at 16–22; Strong's Mot., Ex. A, 32:11–32:18; 90:22–91:4; 117:6–117:17.) Therefore, Plaintiff also cannot claim that any of Defendant Strong's alleged actions prevented him from receiving treatment.  Thus, Plaintiff fails to prove that Defendant Strong's alleged actions resulted in any constitutional violation.

Because Plaintiff has failed to establish either the objective or subjective components of an Eighth Amendment claim related to his medical needs as to Defendant Strong, he has failed to demonstrate a genuine issue for trial, *see Concrete Works, Inc.*, 36 F.3d at 1518, and Defendant Strong is entitled to summary judgment on the claim.

### b.     Safety Needs

Again, in determining whether a prison official acted with deliberate indifference to a plaintiff's safety needs, "[f]irst, the deprivation alleged must be, objectively, 'sufficiently serious.' " *Farmer*, 511 U.S. at 834.  "For a claim . . .  based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*  Second, the prison official must have a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  The "state of mind is one of 'deliberate indifference' to

inmate . . . safety." *Farmer*, 511 U.S. at 834.  The inmate must show that a prison official "knows of and disregards an excessive risk to inmate . . . safety." *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001)(quotation omitted).  If the risk of harm is obvious, the existence of the necessary subjective state of mind may be inferred.  *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (citing *Farmer*, 511 U.S. at 842).

Here, Plaintiff had no harm or injury as a result of being housed in the cell after he allegedly informed Defendant Strong about the incident.  Based on the Plaintiff's own testimony, his alleged attacker never spoke to him or touched him again after the initial incident and, therefore, Plaintiff cannot show any evidence to suggest that being housed in the cell after he allegedly informed Defendant Strong about the incident at approximately 6:00 a.m., three hours after the alleged incident had occurred, caused him any injury or violated any of his rights. (Strong's Mot., Ex. A, 51:24–52:10, 54:14–54:16, 78:6–78:12.)  Therefore, based on the undisputed evidence, Plaintiff has failed to show that his continued housing in the cell with his alleged attacker for several hours after the alleged incident was objectively, sufficiently serious. *Farmer*, 511 U.S. at 834, or that he was held in the cell "under conditions posing a substantial risk of serious harm," *id.*

Moreover, Plaintiff has presented no evidence to suggest that Defendant Strong knew of or disregarded an excessive risk to his safety.  The undisputed evidence shows that Plaintiff had not informed any medical staff, Sergeants or other deputies about the alleged incident or his alleged injuries during the time between the alleged attack and when Defendnat Strong came on duty.  Furthermore, Defendant Strong had no indication that Plaintiff's cellmate would act

violently toward Plaintiff, as based on the Plaintiff's own statements, the cellmate was sitting on his bunk, not speaking to or touching the Plaintiff in any way. Plaintiff has failed to show that Defendant Strong knew of an disregarded an excessive risk to Plaintiff's safety. *Garrett*, 254 F.3d at 949.

Again, as Plaintiff has failed to establish either the objective or subjective components of an Eighth Amendment claim for his safety needs, Defendant Strong is entitled to summary judgment on the claim.

### 2.      *Claim for Failure to Secure a Crime Scene*

Defendant Strong argues that he is entitled to summary judgment on Plaintiff's claim that he failed to secure the crime scene in which the alleged sexual assault took place.

The Due Process Clause of the Fourteenth Amendment requires the State to preserve evidence that "might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). However, here, Plaintiff would not have been the defendant if any charges had been filed with regard to the alleged assault. Thus, Plaintiff has no standing to bring a Fourteenth Amendment claim for failure to preserve evidence, and Defendant Strong is entitled to summary judgment on such a claim.

To the extent Plaintiff's allegations are based on Defendant Strong's alleged failure to properly follow various prison regulations (*see* Doc. No. 9 at 3, ¶ 4), Plaintiff fails to allege the violation of a Constitutional right. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin*, 515 U.S. at 481–82. Thus, even if Defendant Strong did not follow the

25

prison's "security procedures," such failure would not constitute a violation of Plaintiff's right to due process. *See Malik v. Kindt*, No. 95–6057, 1996 WL 41828, at *2 (10th Cir. Feb. 2, 1996) ("a failure to adhere to administrative regulations does not equate to a constitutional violation") (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir.1993)). Thus, Defendant Strong is entitled to summary judgment on this claim.

### 3.    *Claim Related to Alleged "Throwing Away" Kites*

Again, to the extent Plaintiff's allegation that Defendant Strong threw away kites is based on Defendant Strong's failure to follow prison regulations, Plaintiff has failed to allege a violation of a Constitutional right. *See Malik*, 1996 WL 41828, at *2. Moreover, the Tenth Circuit and the United States District Court of Colorado have also concluded that alleged failures to provide grievance forms or to follow grievance procedures do not support a constitutional claim. *See Thomas v. Ortiz*, 2007 WL 3256708, *4 (D. Colo. 2007) (in dismissing claims against grievance officer who allegedly failed to process grievance related to the failure to provide adequate medical care, found that state grievance procedure did not create any constitutional rights); *Sims v. Miller*, 5 F. App'x 825, 828 (10th Cir. 2001) (affirming ruling that "insofar as plaintiff contended that CDOC officials had failed to comply with the prison grievance procedures, he had failed to allege the violation of a federal constitutional right"); *Walters v. Corrections Corp. of America*, 119 F. App'x 190, 191 (10th Cir. 2004) (same). To the extent that Plaintiff alleges that Defendant Strong failed to provide him grievance forms, his claim fails, and Defendant Strong is entitled to summary judgment.

**D.      *Defendant Pagliano's Motion for Summary Judgment***

Plaintiff alleges his constitutional rights were violated when "medical staff" ignored "his pleas for medical treatment," (Doc. No. 9,¶ 21) and that Defendant Nurse Pagliano was responsible for placing him in a cell with an "at risk inmate" who allegedly licked his ear and touched his genitals while he was asleep (*id.*,¶¶ 14-18).   During the relevant time period, Defendant Nurse Pagliano was a full-time employee of Denver Health and Hospital Authority, which is not a defendant in this case.  (Pagliano's Mot., Ex. A, ¶ 3.)  Of the Defendants, Nurse Pagliano is the only healthcare provider.  Defendant Pagliano argues that Plaintiff has not presented evidence sufficient to show Defendant Pagliano acted with deliberate indifference to a substantial risk of serious damage to Plaintiff's future health.

Once again, to demonstrate a constitutional violation by Defendant Pagliano, Plaintiff must show she acted with deliberate indifference to an excessive risk to his health or safety; that she was aware of facts from which the inference of an excessive risk of harm existed, and that she actually drew the inference.  *Farmer*, 511 U.S. at 835-37.  Plaintiff has not presented sufficient evidence for a reasonable trier of fact to determine Defendant Pagliano knew of and disregarded a risk of serious harm to Plaintiff.  During his care and treatment in the medical unit on the evening of June 18, 2005, which is the single incident Plaintiff alleges Defendant Pagliano's involvement, Defendant Pagliano was not in a position to know of, much less disregard or take reasonable measure to abate, a risk of serious harm to Plaintiff from his cellmate.  The undisputed evidence shows that Defendant Pagliano was not responsible for Plaintiff's placement in the particular observation cell.  (Pagliano's Mot., Ex. C, ¶ 8; Ex. A, ¶ 6.)

Moreover, Defendant Pagliano had no personal knowledge regarding the criminal propensities of any inmate with whom Plaintiff may have shared a cell – both because, as a nurse, she was not privy to information about the backgrounds of the inmates and because she was not responsible for knowing the identity of any inmate or inmates with whom Plaintiff would be placed.  (*See id.*, Ex. A,  ¶ 7.)  Not only was Defendant Pagliano unaware of the cellmate's background, but, as the City and County of Denver noted in its Motion, the classification records kept by the Sheriff's Department regarding Plaintiff's cellmate contain no indication of a history of sexual assault by that individual.  (*See* City's Mot., Exhibit BB, ¶ 3.)  Accordingly, Plaintiff cannot show Defendant Pagliano acted with deliberate indifference to an excessive risk of harm to Plaintiff's health or safety.

Moreover, to the extent Plaintiff may argue he was denied constitutionally adequate medical treatment, such an assertion is unfounded.  To establish an Eighth Amendment claim for lack of constitutionally sufficient medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' "  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)(quoting *Estelle*, 429 U.S. at 106).  The undisputed records reveal Plaintiff received extensive and well-documented care and treatment by Defendant Pagliano on June 18, 2005, and any inadequacy Plaintiff may allege is not deliberate indifference to a serious medical condition.  *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999)("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").  Furthermore, regarding medical care and treatment beyond that with which Defendant Pagliano was involved, Plaintiff was seen by

numerous healthcare practitioners, including nurses and two psychiatrists, over the following days, on June 20, 21, and 24, 2005. (*See* Pagliano's Mot., Ex. E.)  Thus, any assertion that Plaintiff did not receive constitutionally adequate medical care during the relevant time period fails.

Based on the foregoing, Defendant Pagliano is entitled to summary judgment.

**WHEREFORE,** for the foregoing reasons, this court respectfully

**RECOMMENDS** that the "City and County of Denver's Combined Summary Judgment Motion and Brief" (Doc. No. 181), "Defendant Sheriff Strong's Motion for Summary Judgment and Memorandum Brief" (Doc. No. 182), and the "Motion for Summary Judgment by Defendant Nurse Rosie Pagliano" be **GRANTED**, and that summary judgment be entered in favor of Defendants and against Plaintiff on all of Plaintiff's claims.  The court further

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation and order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 28th day of August, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge